**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Southern District of New York

Case number (*If known*)  20-_____ Chapter 15

☐ Check if this is an
amended filing

Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding   12/15

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).

| | |
|---|---|
| 1. **Debtor's name** | Minera Tres Valles S.p.A. |

2. **Debtor's unique identifier**

**For non-individual debtors:**

☐ Federal Employer Identification Number (EIN)   ___ ___  –  __ __ __ __ __ __ __

☑ Other  77.856.200-6 . Describe identifier  Chilean Tax ID No. .

**For individual debtors:**

☐ Social Security number:   xxx – xx– ____ ____ ____ ____

☐ Individual Taxpayer Identification number (ITIN):  **9** xx – xx – ____ ____ ____ ____

☐ Other _____ . Describe identifier _____ .

| | |
|---|---|
| 3. **Name of foreign representative(s)** | José Felizardo Figueroa Barrueco |
| 4. **Foreign proceeding in which appointment of the foreign representative(s) occurred** | Reorganization Proceeding - 30º Civil Court in Santiago, Chile |

5. **Nature of the foreign proceeding**

*Check one:*

☑ Foreign main proceeding
☐ Foreign nonmain proceeding
☐ Foreign main proceeding, or in the alternative foreign nonmain proceeding

6. **Evidence of the foreign proceeding**

☑ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.

☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

☑ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.
Court appointment of the Chilean Overseer as Foreign Representative

_____

7. **Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?**

☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)

☑ Yes

| Debtor | Minera Tres Valles S.p.A. | Case number *(if known)* 20- |
|--------|----------------------------|------------------------------|
|        | Name |                                          |

---

**8.  Others entitled to notice**

Attach a list containing the names and addresses of:

(i)  all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii)  all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii)  all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

---

**9.  Addresses**

**Country where the debtor has the center of its main interests:**

Chile

**Debtor's registered office:**

Avenida Apoquindo N⁰ 4775

Number        Street

Oficina 501

P.O. Box

Las Condes, Santiago        7        58009

City        State/Province/Region        ZIP/Postal Code

Chile

Country

**Individual debtor's habitual residence:**

Number        Street

P.O. Box

City        State/Province/Region        ZIP/Postal Code

Country

**Address of foreign representative(s):**

Avenida Apoquindo N⁰ 3910

Number        Street

Piso 15

P.O. Box

Las Condes, Santiago        7        58009

City        State/Province/Region        ZIP/Postal Code

Chile

Country

---

**10.  Debtor's website** (URL)

https://mineratresvalles.com/

---

**11.  Type of debtor**

*Check one:*

☑  Non-individual (*check one*):

☑  Corporation.  Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

❑  Partnership

❑  Other.  Specify: _____

❑  Individual

---

| Debtor | Minera Tres Valles S.p.A. | Case number (if known) 20- |
|---|---|---|
| | Name | |

**12. Why is venue proper in _this_ _district_?**

Check one:

☑ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

_____

☐ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:

_____

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

✖ _____     José Felizardo Figueroa Barrueco
Signature of foreign representative                 Printed name

Executed on   08/12/2020
                       MM / DD / YYYY

✖ _____     _____
Signature of foreign representative                 Printed name

Executed on   _____
                       MM / DD / YYYY

**14. Signature of attorney**

✖ _____     Date   08/12/2020
Signature of Attorney for foreign representative           MM / DD / YYYY

John A. Mueller
Printed name

Lippes Mathias Wexler Friedman LLP
Firm name

50 Fountain Plaza, Suite 1700
Number        Street

Buffalo                                                    NY              14202
City                                                        State          ZIP Code

(716) 362-7614                                    jmueller@lippes.com
Contact phone                                      Email address

4700050                                              NY
Bar number                                          State

John A. Mueller
LIPPES MATHIAS WEXLER FRIEDMAN LLP
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202-2216
(716) 362-7614
jmueller@lippes.com

· *Counsel to the Foreign Representative*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE:

MINERA TRES VALLES S.P.A.,[1]

DEBTOR IN A FOREIGN PROCEEDING.

CHAPTER 15

CASE NO. 20-_____-____

## DISCLOSURE PURSUANT TO RULE 1007(a)(4)(B) OF THE
## FEDERAL RULES OF BANKRUPTCY PROCEDURE

José Felizardo Figueroa Barrueco, in his capacity as the duly authorized foreign representative ("Foreign Representative") of the above-captioned debtor, Minera Tres Valles S.p.A. ("Foreign Debtor" of the "Company"), with respect to the Bankruptcy Procedure of Judicial Reorganization currently pending before the 30º Civil Court of Santiago, Chile, and assigned Case No. C-7373-2020 ("Chilean Proceeding") hereby files this list pursuant to Bankruptcy Rule[2] 1007(a)(4)(B) and respectfully state as follows:

---

[1] The Foreign Debtor's Chilean tax identification number is 77.856.200-6 and its executive office is located at Avenida Apoquindo 4775, Oficina 501, Las Condes, Santiago, Chile 758009.
[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Petition.

## I.    AUTHORIZED TO ADMINISTER CHILEAN PROCEEDING

| **Name** | **Address** |
|---|---|
| Luis Vega Munoz – CEO of Foreign Debtor | Avenida Apoquindo Nº 4775, Oficina 501 Las Condes, Santiago, Chile 758009 |
| Daniela Andrea Royer Fuandez – Head Judge | Huérfanos Nº 1409, Santiago |
| Jose Felizardo Figueroa Barrueco – Overseer / Foreign Representative | Avenida Apoquindo Nº 3910, piso 15 Las Condes, Santiago, Chile |
| Enrique Ortiz D'Amico – Alternate Overseer | Amunátegui Nº 277, Oficina 1001 Santiago, Chile |

## II.    PENDING U.S. LITIGATION

1.    Neither the Foreign Representative nor the Foreign Debtor are party to any litigation currently pending in the U.S.

## III.    PROVISIONAL RELIEF – 11 U.S.C. § 1519

2.    The Foreign Representative is seeking provisional relief to stay execution against the U.S. Accounts. Accordingly, the Foreign Debtor is providing notice of the Petition and related filings to the Secured Lenders, Agent, Intercompany Lenders and Citibank.

Dated: August 14, 2020
        Buffalo, New York

**LIPPES MATHIAS WEXLER FRIEDMAN LLP**

_____*/s/ John A. Mueller*_____
John A. Mueller, Esq
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
(716) 362-7614
jmueller@lippes.com

· *Counsel to the Foreign Representative*

John A. Mueller
LIPPES MATHIAS WEXLER FRIEDMAN LLP
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202-2216
(716) 362-7614
jmueller@lippes.com

· *Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE:

MINERA TRES VALLES S.P.A.,[1]

DEBTOR IN A FOREIGN PROCEEDING.

CHAPTER 15

CASE NO. 20-_____-___

---

**CORPORATE OWNERSHIP STATEMENT**
**PURSUANT TO RULES 1007(a)(4)(A) AND 7007.1 OF THE FEDERAL RULES OF**
**BANKRUPTCY PROCEDURE AND LOCAL RULE 1007-3**

José Felizardo Figueroa Barrueco, in his capacity as the duly authorized foreign representative ("Foreign Representative") of the above-captioned debtor, Minera Tres Valles S.p.A. ("Foreign Debtor" of the "Company"), with respect to the Bankruptcy Procedure of Judicial Reorganization currently pending before the 30º Civil Court of Santiago, Chile, and assigned Case No. C-7373-2020 ("Chilean Proceeding") hereby files this corporate ownership statement pursuant to Rules 1007(a)(4)(A) and 7007.1 of the Federal Rules of Bankruptcy Procedure and Rule 1007-3 of the Local Bankruptcy Rules for the Southern District of New York, and respectfully state as follows:

---

[1] The Foreign Debtor's Chilean tax identification number is 77.856.200-6 and its executive office is located at Avenida Apoquindo 4775, Oficina 501, Las Condes, Santiago, Chile 758009.

1.      As of the date of this filing, the Foreign Debtor's equity is held as follows: (i) 70% – SRH Chile S.p.A.; and (ii) 30% – Porto San Giorgio S.p.A., both companies organized and existing under the laws of Chile.

Dated: August 14, 2020                     **LIPPES MATHIAS WEXLER FRIEDMAN LLP**
       Buffalo, New York

                                           _____/s/ John A. Mueller_____
                                           John A. Mueller, Esq
                                           50 Fountain Plaza, Suite 1700
                                           Buffalo, New York 14202
                                           (716) 362-7614
                                           jmueller@lippes.com

                                           · *Counsel to the Foreign Representative*

John A. Mueller
Lippes Mathias Wexler Friedman LLP
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202-2216
(716) 362-7614
jmueller@lippes.com

· *Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re:

Minera Tres Valles S.p.A.,[1]

       Debtor in a Foreign Proceeding.

Chapter 15

Case No. 20-_____-___

---

**(I) VERIFIED PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING**
**AND (II) REQUEST FOR PROVISIONAL RELIEF**
**UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

José Felizardo Figueroa Barrueco, in his capacity as the authorized foreign representative ("Foreign Representative") of the above-captioned debtor, Minera Tres Valles S.p.A. ("Foreign Debtor" or the "Company"), subject to a Bankruptcy Procedure of Judicial Reorganization currently pending before the 30º Civil Court of Santiago, Chile, and assigned Case No. C-7373-2020 ("Chilean Proceeding"), respectfully submits this chapter 15 verified petition and request for immediate provisional relief (together with the official form petition filed concurrently herewith, the "Petition") in support of entry of the following orders:

(I)       Granting immediate *provisional* relief under section 1519(a)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. ("Bankruptcy Code"), staying

---

[1] The Foreign Debtor's Chilean tax identification number is 77.856.200-6 and its executive office is located at Avenida Apoquindo 4775, Oficina 501, Las Condes, Santiago, Chile 758009.

execution against the U.S. Accounts (as defined below), with a proposed form of order attached hereto as **Exhibit A** ("Provisional Relief Order"); and

(II)    Pursuant to Section 1517(a) of the Bankruptcy Code: (A) finding that (i) the Foreign Debtor is an eligible "debtor" under Chapter 15 of the Bankruptcy Code, (ii) the Chilean Proceeding is the Foreign Debtor's "foreign main proceeding" pursuant to Section 1502 of the Bankruptcy Code, (iii) the Foreign Representative satisfies the requirements of a "foreign representative" under Section 101(24) of the Bankruptcy Code, and (iv) the Petition meets all requirements of Section 1515 of the Bankruptcy Code; (B) granting recognition of the Chilean Proceeding as a foreign main proceeding under Sections 1517, 1520 and 1521 of the Bankruptcy Code; and (C) enforcing and granting comity to the Stay Order (as defined below) in the U.S., with a proposed form order attached hereto as **Exhibit B** ("Recognition Order").

In support of the Petition, the Foreign Representative is filing contemporaneously herewith: (i) *Declaration of Foreign Representative in Support of (I) Verified Petition for Recognition of Foreign Main Proceeding and (II) Request for Provisional Relief Under Chapter 15 of the Bankruptcy Code* ("Figueroa Declaration"); (ii) *Declaration of Foreign Debtor in Support of (I) Verified Petition for Recognition of Foreign Main Proceeding and (II) Request for Provisional Relief Under Chapter 15 of the Bankruptcy Code* ("Vega Declaration"); and (iii) *Declaration of Nelson Contador Rosales in Support of (I) Verified Petition for Recognition of Foreign Main Proceeding and (II) Request for Provisional Relief Under Chapter 15 of the Bankruptcy Code* ("Contador Declaration"), each of which are incorporated herein by reference (collectively, the "Declarations").

2

## I.    PRELIMINARY STATEMENT

1.    The Foreign Debtor's primary business is to produce and sell copper cathodes. As a result, the Foreign Debtor's financial position depends on the prevailing global prices for copper cathodes. The Foreign Debtor has entered into an offtake agreement (the "Offtake") with Anglo American Marketing Limited ("AAM Ltd.") to sell 100% of all copper cathodes produced. This represents over 95% of the Company's revenue. In line with the overall copper industry, China represents the largest consumer of copper cathodes.

2.    Same as many other industries around the world, the Foreign Debtor's business has suffered greatly due to the COVID-19 pandemic. On March 23, 2020, the Chilean government declared a state of catastrophe and local officials in Salamanca formally requested that MTV temporarily halt or restrict operations as a measure to slow down the spread of the virus.

3.    Concurrent with the steep decline in Chinese demand resulting from COVID-19, and corresponding reductions in global copper prices, Chile's social unrest that began in October 2019 has continued in the background affecting the availability of short-term working capital loans that many of MTV's suppliers rely on for day-to-day and month-to-month cash flows (the "Social Unrest Effect"). As a result, many of MTV's suppliers experienced working capital challenges and insisted that the Company move to accelerated payment terms, further exacerbating its precarious financial position.

4.    Before the pandemic, the Foreign Debtor was already facing significant operational and financial difficulties due to the ongoing "mega drought" in Chile, which has been ongoing for over ten (10) years[2] together with the continuing Social Unrest Effect. In particular, the Foreign Debtor's operations are located in Region IV of Chile, which is now part of a designated

---

[2] *See* https://dialogochino.net/en/climate-energy/30820-chiles-mega-drought-rolls-on/

"agricultural emergency zone."[3] The Company's operations require a significant amount of water to produce copper cathodes. The Choapa River, from which the majority of the Company's water is drawn, was operating at 15% of its historical flow rates (and as low as 6%) for the majority of January through May.

5.      The confluence of all these financial and environmental difficulties drastically reduced the Foreign Debtor's revenues and undermined its ability to pay debts in the ordinary course of business. As a result, on May 12, 2020, the Foreign Debtor filed an application to open a reorganization proceeding with the 30º Civil Court of Santiago, Chile. On May 29, 2020, the Civil Court issued the Resolution of Reorganization that formally commenced the Chilean Proceeding and an initial stay period of thirty (30) business days ("Stay Order"). A true and accurate copy of the Stay Order, with a certified English translation, is attached hereto as **Exhibit C**.

6.      While the Foreign Debtor's operations are exclusively in Chile, it maintains certain bank accounts in the U.S. The Foreign Debtor is commencing this Chapter 15 case for the limited purpose of protecting those U.S. Accounts (as defined below) and all funds contained therein; thus, avoiding any disruption to either its operations or the Chilean Proceeding. Under the Offtake, these U.S. Accounts are used solely for the purpose of receiving 100% of the revenue received from the Offtake before being available for distribution to the Company's Chilean-domiciled bank accounts.

## II.    JURISDICTION & VENUE

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, Section 1501 of the Bankruptcy Code, and the *Amended Standing Order of Reference to*

---

[3] *Id.*

4

*Bankruptcy Judges of the District Court for the Southern District of New York*, dated January 31, 2012 (Preska, C.J.).

8.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P). The Foreign Debtor confirms consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with the Petition to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the U.S. Constitution.

9.      This Chapter 15 case has been properly commenced pursuant to Section 1504 of the Bankruptcy Code by the filing of a petition for recognition of the Chilean Proceeding under Section 1515 of the Bankruptcy Code.

10.     Venue is proper pursuant to 28 U.S.C. § 1410(1) and (3). The Foreign Debtor has property in the U.S. in the form of a legal counsel retainer with LIPPES MATHIAS WEXLER FRIEDMAN LLP in Buffalo, New York, and bank accounts maintained at Citibank, N.A., in New York, New York.

11.     The bases for the relief requested herein are Sections 1504, 1507, 1509, 1510, 1515, 1517, 1519, 1520 and 1521 of the Bankruptcy Code, and Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York ("Local Rules").

   III.    **BACKGROUND**

        A. *Business Summary*

12.     The Foreign Debtor is a fully permitted and operating mining complex located near Salamanca in Region IV of Chile. The mine commenced commercial production in 2010 and consists of two (2) main deposits: (i) Papomono – underground; and (ii) Don Gabriel – open pit, along with several ancillary deposits.

5

13.     In addition to mining its own ore, the Foreign Debtor purchases mineralized material from local miners and has a toll processing agreement with ENAMI, a Chilean state-owned enterprise that supports small and artisanal miners.

14.     The Foreign Debtor has a crushing and processing plant with nameplate capacity of 6,000 tons per day. The plant is designed to produce up to 18,500 tons per annum of copper cathodes.

15.     As of December 31, 2019, the Foreign Debtor employed a total of 273 employees, approximately 200 of whom are represented by the Tres Valles' Workers Union Association, and 417 contractors.

16.     All of the Foreign Debtor's revenue stems from operations in Chile and some important items to note regarding its structure and daily business activities:

(i)     registered office and corporate headquarters are located at Avenida Apoquindo 4775, Oficina 501, Las Condes, Santiago, Chile;

(ii)    primary control and decision-making are made from the principal place of business in Chile;

(iii)   majority of employees reside in Chile;

(iv)    all assets are in Chile, with the exception of the U.S. Accounts; and

(v)     majority of administrative functions, including accounting, financial reporting, budgeting, and cash management, are conducted in Chile.

### B. *Status Of Operations*

17.     On March 23, 2020, local officials in Salamanca formally requested that MTV temporarily halt or restrict operations as a measure to slow down the spread of the virus. They also

requested that MTV do so while continuing to remunerate the employee base, which was not financially possible for MTV.

18.     MTV responded by temporarily halting the majority of all mining operations, significantly reducing the employee base required to maintain minimal operations, maintaining the necessary staff to operate and monitor the leach pad, maintaining the necessary staff to operate its solvent-extraction and electrowinning processing plant where its copper cathodes are produced and maintaining the necessary staff to conduct preventative maintenance of key equipment.

## IV.    CAPITAL STRUCTURE

### A.    *Secured Lenders*

19.     On January 26, 2017, the Foreign Debtor entered into a line of credit financing contract ("Credit Facility") with GAM Kimura Commodity Trade Finance Fund Limited ("Kimura") in the amount of $9,500,000.[4] In the third quarter of 2018, the Credit Facility was renewed and extended to $15,000,000. At that time, Sprott Resource Holdings Inc., a company duly registered and incorporated in Canada ("SRHI"),[5] became guarantor to the Credit Facility ("Credit Facility Guarantee"), replacing the Foreign Debtor's former majority shareholder. In September 2019, the Credit Facility was further renewed and extended to $20,000,000, as was the Credit Facility Guarantee.

20.     In 2017, SRHI purchased a 70% ownership in MTV after conducting significant due diligence on MTV's future mining potential. SRHI, together with MTV initiated several technical engineering studies to validate the due diligence and in late 2018 began marketing the project to find a debt partner to help finance MTV's proposed expansion. MTV, SRHI and the

---

[4] All monetary amounts are in USD.
[5] On June 23, 2020, Sprott Resource Holdings Inc. formally changed its name to SRHI Inc.

Senior Lenders (defined below) entered into the New Credit Facility (defined below) in December 2019.

21.    In December 2019, the Foreign Debtor repaid the Credit Facility and the Credit Facility Guarantee expired upon the Foreign Debtor's entry into a credit facility with new lenders in the amount of $45,000,000 ("New Credit Facility"): (i) AAM Ltd.; and (ii) Kimura (collectively "Secured Lenders"). SRHI serves as a limited guarantor under the New Credit Facility, with Citicorp International Limited serving as facility agent and security agent ("Agent").

### B. *Intercompany Lenders*

22.    The Foreign Debtor has also obtained financing from a group of intercompany and/or affiliated lenders: (i) SRHI; (ii) Sprott Resource Corp. ("SRC"), a company duly registered and incorporated in Canada – a wholly-owned subsidiary of SRHI;[6] (iii) SRH Chile S.p.A. ("SRH Chile"), a company organized and existing under the laws of Chile – a wholly-owned subsidiary of SRC; and (iv) certain members of MTV's management (collectively, the "Intercompany Lenders").

23.    Pursuant to an Intercreditor Agreement, dated December 10, 2019, the Foreign Debtor's obligations to the Intercompany Lenders are subordinate to those of the Secured Lenders.

### C. *Trade Creditor Issues*

24.    As noted above, certain of the Foreign Debtor's trade creditors were requiring accelerated repayment terms, and in some cases cash on delivery ("COD"), prior to the pandemic-related shutdown and commencement of the Chilean Proceeding.

---

[6] On June 23, 2020, Sprott Resource Corp. formally changed its name to SRHI Resource Corp.

25.     Some of these creditors have international operations, personnel and enforcement capabilities. As a result, the Foreign Debtor is very concerned by the current exposure of the U.S. Accounts:

(i)     The U.S. accounts are instrumental in, and critical to, the Foreign Debtor's operations; namely, 100% of all revenue pertaining to the Offtake flows through these accounts;

(ii)    An international creditor was successful in freezing all Chilean bank accounts of MTV, *and attempting to freeze the U.S. Accounts as well*, immediately prior to MTV entering protection (detailed below); and

(iii)   If/when some portion of the withdrawn funds (detailed below) are returned, it will be exposed to potential creditor action.

### D. *U.S. Bank Accounts*

26.     Immediately before MTV entered into creditor protection in Chile, an international creditor obtained a court order freezing all Chilean bank accounts of MTV. At the same time, the creditor attempted to execute against the U.S. Accounts, but was denied access by the Chilean banks. As a result, MTV's only operational accounts are the U.S. Accounts (defined below).

27.     MTV expects to have its Chilean bank accounts reactivated but MTV cannot risk having any further actions taken on its accounts, including the U.S. Accounts.

28.     As part of the New Credit Facility, the Foreign Debtor was required to maintain a reserve account at the New York Branch of Citibank, N.A. ("Citibank"), with a minimum balance of $7,000,000.

9

29.    In accordance with this requirement and for other business purposes, the Foreign Debtor opened a pair of accounts with Citibank: (i) xxxx5500 – collection account; and (ii) xxxx5600 – operating account (collectively "U.S. Accounts").

30.    On May 12, 2020, pursuant to an Offshore Accounts Agreement, the Agent issued an 'Account Stop Notice' to Citibank restraining the Foreign Debtor's U.S. Accounts. Shortly thereafter, in accordance with the terms of the New Credit Facility, the Secured Lenders withdrew $6,500,000 from the Foreign Debtor's U.S. Accounts.

31.    Upon information and belief, the withdrawn funds are currently held in a suspense account at Citibank, for the benefit of the Secured Lenders. As part of the Chilean Proceeding, there are ongoing negotiations between the Foreign Debtor and Secured Lenders to have some portion of the withdrawn funds returned to the U.S. Accounts.

### E.  *Equity Interests*

32.    The Foreign Debtor's equity is held as follows: (i) 70% – SRH Chile; and (ii) 30% – Porto San Giorgio S.p.A., a company organized and existing under the laws of Chile (together, the "Shareholders").

## V.    CHILEAN PROCEEDING[7]

### A.  *Summary of Chilean Law*

33.    Chilean insolvency law provides for the possibility of a distressed company to commence a reorganization proceeding ("Reorganization Proceeding"). The Reorganization Proceeding is governed by Chapter III of Law 20,720 on Reorganization and Liquidation of Companies and Individuals ("Reorganization Law"). The Reorganization Proceeding allows viable businesses protection during temporary periods of financial distress.

---

[7] Section V.A is drawn from the Contador Declaration filed contemporaneously herewith.

34.     A Reorganization Proceeding is commenced by a debtor by filing an application to open a Reorganization Proceeding ("Application") with the Civil Court that has jurisdiction over such debtor. Article 56 of the Reorganization Law requires the debtor to include certain information regarding its financial position and assets and liabilities with the Application.

35.     Immediately after the Application is filed, the three largest creditors of the debtor select an overseer ("Overseer") as well as an alternate Overseer, on an administrative proceeding hold under the Superintendence of Insolvency and Re-entrepreneurship ("Superintendence of Insolvency"). During the Reorganization Proceeding, the debtor's management remains in control of the debtor, but the Overseer is provided with certain supervisory authority over the debtor's management. Article 25 of the Reorganization Law provides the Overseer with authority to seek any provisional and preservation remedies for the debtor's assets that are necessary to protect the interests of the creditors, in which he can issue certificates (each, an "Overseer Certificate") that clarify the meaning of certain orders issued by the Civil Court. If there is a dispute regarding the meaning of any order issued by the Civil Court in front of another court in Chile, parties to that dispute often submit Overseer Certificates in order to clarify the meaning of such order and the other Chilean court will accept Overseer Certificates as evidence of the meaning of the Civil Court's order.

36.     After the Overseer and alternate Overseer are selected, the Superintendence of Insolvency issues a certificate of nomination ("Certificate of Nomination") designating the Overseer and alternate Overseer.

37.     Following the issuance of a Certificate of Nomination, the Civil Court where the Application was filed will issue the Resolution of Reorganization ("Stay Order") which formally commences the Reorganization Proceeding. The Stay Order commences the *Protección*

*Financiera Concursal* for an initial period of 30 business days ("Reorganization Proceeding Stay").[8] While the Reorganization Proceeding Stay is in effect, no execution or enforcement procedures may be initiated against the debtor and "ipso facto" clauses cannot be enforced. Further, the Reorganization Proceeding Stay prohibits any creditor of the debtor from collecting on or enforcing any guarantee such creditor may have obtained from a third party of the debtor's obligations to such creditor, even if such guarantee was intended to be an independent obligation of such third party. Specifically, Article 57 of the Reorganization Law requires each Stay Order to provide that guarantees provided by non-debtors cannot be enforced or collected on "invoking as grounds the commencement of a Reorganization Proceeding." The Reorganization Proceeding Stay is intended to have worldwide effect.

38.     The Reorganization Proceeding Stay can be extended for: (i) an additional 30 business days with the consent of two or more unaffiliated creditors holding more than 30% of the total debt of the debtor (excluding debt held by affiliates or insiders); and (ii) an additional 60 business days with the consent of two or more creditors holding more than 50% of the total debt of the debtor (excluding debt held by affiliates or insiders).

39.     At the conclusion of the Reorganization Proceeding Stay Period, a hearing is held ("Plan Approval Hearing") where the creditors vote on whether to approve a judicial reorganization agreement ("Plan") proposed by the debtor. The debtor is required to submit its Plan at least 10 business days prior to the Plan Approval Hearing. The Overseer is required to provide a report on the Plan ("Overseer Report") at least 3 business days prior to the Plan Approval Hearing. The Overseer Report is required to include, among other things, the Overseer's opinion regarding whether the Plan is feasible in light of the debtor's financial position, the likely recovery

---

[8] Judicial business days in Chile includes Saturdays.

for each class of creditors in the event the Plan was not approved and the debtor was liquidated, and whether the Plan complies with the Reorganization Law.

40.　　For a Plan to be approved at the Plan Approval Hearing, creditors representing both two-thirds of the total number creditors and creditors holding two-thirds of the total debt in each class of creditors (in each case calculated by the creditors in each class that attend the Plan Approval Hearing) must vote in favor of the Plan. The votes of certain insiders, including affiliated entities and directors and officers of the debtor, are not counted as part of the Plan vote or for purposes of determining whether the thresholds for total creditors and amount of debt are met for Plan approval. Creditors are typically grouped into two separate classes: (i) secured creditors; and (ii) unsecured creditors. Privileged creditors, who hold certain claims entitled to preferential treatment under the Reorganization Law, including certain tax claims and labor claims, are not reorganized by this procedure. Continuing suppliers of the debtor (similar to critical vendors under U.S. law), and COMEX creditors, who finance a debtor's foreign trade operations could have a different method of payment than the Plan, provided such creditors agree to continue to extend credit to the debtor and the Overseer approves separate classification.

41.　　If the debtor's Plan is not approved by creditors, a liquidation proceeding against the debtor is typically initiated unless the creditors agree to give the debtor an opportunity to present a second Plan. If the creditors decide to allow the debtor to propose a second Plan, the Reorganization Proceeding Stay Period is extended for an additional 20 business days.

42.　　If the Plan is approved by creditors, then, all creditors are given 5 business days from the Plan Approval Hearing to object to the Plan. If no objections are filed, the Plan approval becomes final after the 5-day period.

### B. *Status of Chilean Proceeding*

43.     As noted in Section I above, the Stay Order was entered in the Foreign Debtor's

Chilean Proceeding on May 29, 2020, some elements of which include, but are not limited to, the

following:

> (i)     appoints Mr. José Felizardo Figueroa Barrueco as Overseer and Mr. Enrique
>
> Ortiz D'Amico as alternate Overseer;
>
> (ii)    stays the declaration or initiation of any insolvency proceedings, execution
>
> and any other enforcement measures against the Foreign Debtor;
>
> (iii)   validates Foreign Debtor contracts and payment requirements, with a stay
>
> against unilateral termination;
>
> (iv)    prohibits the Foreign Debtor from either encumbering or disposing of
>
> assets, or modifying its corporate structure, governance and ownership; and
>
> (v)     Meeting of Creditors scheduled for, and initial Reorganization Proceeding
>
> Stay expires on, July 6, 2020.
>
> *See* **Exhibit C**.

44.     On June 19, 2020, the Stay Order was extended until August 11, 2020.

45.     On July 9, 2020, the Civil Court appointed me as the Foreign Representative for

the purpose of commencing proceedings under Chapter 15 in the U.S. ("Foreign Rep

Appointment"), a true and accurate copy of which is attached hereto as **Exhibit D**.

46.     The above-referenced Foreign Rep Appointment acknowledges and approves the

authority given to the Foreign Representative to commence and act as Foreign Representative in

the Foreign Debtor's Chapter 15 case. *See* **Exhibit D**.

## VI.   REQUEST FOR RELIEF

47.     Chapter 15 of the Bankruptcy Code is designed to promote cooperation and comity between U.S. and foreign courts, protect and maximize the value of debtor assets, and facilitate the rehabilitation and reorganization of businesses. Chapter 15 is intended to avoid disruptions that could otherwise derail a foreign debtor's restructuring in its home country.

48.     Pursuant to Section 1519(a)(1) of the Bankruptcy Code, the Foreign Representative respectfully requests immediate entry of the Provisional Relief Order staying execution against the U.S. Accounts, pending the formal recognition hearing before this Court. *See* **Exhibit A**.

49.     Pursuant to Section 1517(a) of the Bankruptcy Code, the Foreign Representative respectfully requests entry of the Recognition Order: (A) finding that (i) the Foreign Debtor is an eligible "debtor" under Chapter 15 of the Bankruptcy Code, (ii) the Chilean Proceeding is the Foreign Debtor's "foreign main proceeding" pursuant to Section 1502 of the Bankruptcy Code, (iii) the Foreign Representative satisfies the requirements of a "foreign representative" under Section 101(24) of the Bankruptcy Code, and (iv) the Petition meets all requirements of Section 1515 of the Bankruptcy Code; (B) granting recognition of the Foreign Proceeding as a foreign main proceeding under Sections 1517, 1520 and 1521 of the Bankruptcy Code; and (C) enforcing and granting comity to the Stay Order (as defined below) in the U.S. *See* **Exhibit B**.

### A.   *Request for Immediate Provisional Relief Protecting the U.S. Accounts*

50.     Section 1519 of the Bankruptcy Code authorizes bankruptcy courts to issue provisional relief, including entry of a stay similar to the automatic stay in Section 362 of the Bankruptcy Code, to protect a foreign debtor and its property located in the U.S. Specifically, upon filing a petition for recognition under Chapter 15, the Bankruptcy Code provides:

> *From the time of filing a petition for recognition until the court rules on the petition*, the court may, at the request of the foreign representative, where relief is urgently needed to protect the assets of the debtor or the interests of the creditors, grant relief of a provisional nature, including— (1) staying execution against the debtor's assets; … and (3) any relief referred to in paragraph (3), (4), or (7) of section 1521(a).

11 U.S.C. § 1519(a) (emphasis added).

51.     Through its incorporation of Section 1521, Section 1519(a)(3) authorizes the Court

to grant "any appropriate relief" prior to recognition of the foreign main proceeding, including

"any relief that may be available to a trustee," subject to certain limitations, and provided that "the

interests of the creditors and other interested entities, including the debtor, are sufficiently

protected." *Id*. A foreign representative may request such relief "where necessary to effectuate the

purposes of [chapter 15] and to protect the assets of the debtor or the interests of the creditors."

11 U.S.C. § 1521(a).

52.     While a stay under Section 1519 of the Bankruptcy Code is not automatic,

bankruptcy courts routinely grant provisional relief to maintain the status quo pending recognition

or disposition of foreign proceedings. *See, e.g., In re OAS S.A*., No. 15-10937 (SMB), Dkt. No. 33

(Bankr. S.D.N.Y. Apr. 30, 2015) (granting provisional relief and temporarily restraining, among

other things and except for certain pending actions, further execution against, and seizure of the

debtors' property); *In re STX Pan Ocean Co*., No. 13-12046 (SCC), Dkt. No. 30 (Bankr. S.D.N.Y.

July 1, 2013) (granting provisional injunction that tracked the language of Section 362).

53.     <u>Adversarial Proceedings Generally Not Required</u> – Section 1519(e) provides that

"[t]he standards, procedures, and limitations applicable to an injunction shall apply to relief under

this section." Fed. R. Bankr. P. 7001(7) states that "a proceeding to obtain an injunction or other

equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for

the relief" is an adversarial proceeding. However, many courts have held that an adversarial proceeding is not necessary for a motion under Section 1519 of the Bankruptcy Code. *See e.g., In re Worldwide Educ. Services, Inc.*, 494 B.R. 494, 499 n.1 (Bankr. C.D. Cal. 2013) ("[T]he court agrees…that an adversary proceeding is not required to obtain provisional relief under section 1519 of the Bankruptcy Code."); *In re Pro-Fit Int'l, Ltd.*, 391 B.R. 850, 855 (Bankr. C.D. Cal. 2008) (same); *In re Ho Seok Lee*, 348 B.R. 799 (Bankr. W.D. Wash. 2006) (same); *see also In re SIVEC SRL.*, 2011 WL 2445754 (Bankr. E.D. Okla. June 15, 2011) (extending the automatic stay under sections 105(a) and 1519 without an adversary proceeding).

54.    <u>Standard for Injunctive Relief</u> – When deciding whether to grant provisional relief under Section 1519 of the Bankruptcy Code, the standards for issuance of a preliminary injunction are applied. *In re Beechwood Re*, No. 19-11560 (MG), 2019 WL 3025283, at *2 (Bankr. S.D.N.Y. July 10, 2019). When evaluating the factors for a preliminary injunction, "the court takes a flexible approach and no one factor is determinative." *Hawaii Structural Ironworkers Pension Tr. Fund v. Calpine Corp.*, No. 06 CIV. 5358 (PKC), 2006 WL 3755175, at *4 (S.D.N.Y. Dec. 20, 2006) (citing *In re Eagle–Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir.1992)). The factors which are evaluated are: (i) whether there is a likelihood of successful reorganization; (ii) whether there is an imminent irreparable harm to the estate in the absence of an injunction; (iii) whether the balance of harms tips in favor of the moving party; and (iv) whether the public interest weighs in favor of an injunction. *In re Calpine Corp.*, 365 B.R. 401, 409 (S.D.N.Y. 2007).

55.    The Foreign Debtor is seeking very narrow provisional relief; namely, a stay of execution against the U.S. Accounts:

(i)     *Stay Order Intent* – As set out in the Contador Declaration, the existing Stay Order in the Chilean Proceeding is intended to apply worldwide, so the Foreign Debtor's request for provisional relief is directly in line with the Civil Court's ruling.

(ii)    *Secured Lender Support & Agreed Exemption From Automatic Stay* – The Secured Lenders do not oppose the request for provisional relief or recognition of the Chilean Proceeding, and regard the relief as critical to protecting the U.S. Accounts from the actions of other creditors trying to circumvent the Stay Order in the Chilean Proceeding. Further, in order to ensure uninterrupted business operations and the corresponding flow of revenues, the Foreign Debtor has agreed to exempt the Secured Lenders, Agent or any person appointed on their behalf, from the automatic stay under Sections 362(a) and 1519(a)(1) of the Bankruptcy Code, as reflected in the proposed Provisional Relief and Recognition Orders. *See* **Exhibit A** and **Exhibit B**.

(iii)   *International Creditor Threat* – An international creditor was successful in freezing all Chilean bank accounts of MTV, *and attempting to freeze the U.S. Accounts as well*, immediately prior to MTV entering protection.

(iv)    *Injunction Factors Met* – First, the Chilean Proceeding is in the initial stages and there are no indications that the Foreign Debtor's efforts to reorganize will fail. Second, as detailed above, irreparable harm will come to the Foreign Debtor if any creditor is allowed to execute against the U.S. Accounts prior to the recognition hearing with this Court. Third, there is no harm in granting the request for provisional relief; rather, the parties most impacted by the relief (i.e. Secured Lenders) do not oppose the Foreign Debtor's efforts. Lastly, public interest favors

the request for relief in that preservation of current and future funds in the U.S. Accounts will only help the Foreign Debtor's reorganization efforts and eventual Plan in the Chilean Proceeding.

56.     The Foreign Representative submits that immediate entry of the Provisional Relief Order staying execution against the U.S. Accounts is necessary and appropriate. *See* **Exhibit A**.

### B. *Recognition of Chilean Proceeding*

### i.     Foreign Debtor Eligibility – U.S. Accounts

57.     For Chapter 15 eligibility, courts in this district have applied Section 109(a) of the Bankruptcy Code, "only a person that resides or has a domicile, a place of business, or property in the United States…may be a debtor under this title." *See, e.g.*, *Drawbridge Special Opportunities Fund LP v. Barnett (In re Barnett)*, 737 F.3d 238, 247 (2d Cir. 2013). Courts have unanimously held that a foreign debtor satisfies the requirement even if it only has a nominal amount of property in the U.S. *See GMAM Inv. Funds Tr. I v. Globo Comunicacoes e Partipacoes S.A. (In re Globo Comunicacoes e Partipacoes S.A.)*, 317 B.R. 235, 249 (S.D.N.Y. 2004) ("virtually no formal barrier" to federal courts adjudicating foreign debtor bankruptcy proceedings) (citing *In re Aerovias Nacionales de Colombia S.A. (In re Avianca)*, 303 B.R. 1, 9 (Bankr. S.D.N.Y. 2003)). A debtor satisfies Section 109(a) of the Bankruptcy Code if it has any property in the U.S., with many courts looking to two (2) forms of property: (i) contracts; and (ii) bank accounts.

58.     The Foreign Debtor is eligible because it has property in the U.S. in the form of the U.S. Accounts at Citibank in New York. *See In re Inversora Eléctrica de Buenos Aires S.A.*, 560 B.R. 650, 655 (Bankr. S.D.N.Y. 2016) (bank account alone is sufficient to meet the requirement under Section 109); *In re Suntech Power Holdings Co.*, 520 B.R. 399, 413 (Bankr. S.D.N.Y. 2014) ("[The bank account] satisfied the express requirements for eligibility under § 109(a) to permit the

[debtors] to file the chapter 15."); *In re McTague*, 198 B.R. 428, 431–32 (Bankr. W.D.N.Y. 1996)

(*de minimis* bank account balance sufficient to meet Section 109(a) requirement).

59.    Courts in this district have also held that a retainer paid to professionals is sufficient

to meet the 'property' requirement under Section 109 of the Bankruptcy Code. *See In re Octaviar*

*Admin. Pty Ltd.,* 511 B.R. 361, 372-74 (Bankr. S.D.N.Y. 2014) ("line of authority that supports

the fact that prepetition deposits or retainers can supply 'property' sufficient to make a foreign

debtor eligible to file in the United States").

60.    The combination of the Foreign Debtor's U.S. Accounts and retainer paid to

Chapter 15 legal counsel satisfy the requirements under Section 109(a) of the Bankruptcy Code

and provide bases for jurisdiction.

### ii.    Chilean Proceeding = Foreign Main Proceeding

61.    Section 1517(a) of the Bankruptcy Code provides that, after notice and hearing, a

court *shall* enter an order recognizing a foreign proceeding as a foreign main proceeding if:

(i) "such foreign proceeding is a foreign main proceeding" within the meaning of Section 1502 of

the Bankruptcy Code; (ii) "the foreign representative applying for recognition is a person or body";

and (iii) the petition meets the requirements of Section 1515 of the Bankruptcy Code. As set forth

below, the Chilean Proceeding, Foreign Representative, and Petition satisfy all the requirements.

### a.    Chilean Proceeding is a Foreign Proceeding

62.    Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> [A] collective judicial or administrative proceeding in a foreign
> country, including an interim proceeding, under a law relating to
> insolvency or adjustment of debt in which proceeding the assets and
> affairs of the debtor are subject to control or supervision by a foreign
> court, for the purpose of reorganization or liquidation.

> 11 U.S.C. § 101(23)

20

63.    Courts have held that a "foreign proceeding" is:

(i)    a proceeding;

(ii)    either a judicial or an administrative character;

(iii)    collective in nature by considering the rights and obligations of all creditors;

(iv)    located in a foreign country;

(v)    authorized or conducted under a law related to insolvency or the adjustment of debt, even if the debtor is not actually insolvent;

(vi)    debtor's assets and affairs are subject to the control or supervision of a foreign court or other authority that controls or supervises the foreign proceeding; and

(vii)    proceeding is for the purpose of reorganization or liquidation.

*See In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136 (S.D.N.Y. 2012) (citing *In re Betcorp Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev. 2009)); *see also In re ABC Learning Ctrs. Ltd.*, 728 F.3d 301, 308 (3d Cir. 2013); *see generally In re Oversight & Control Comm'n of Avánzit, S.A.*, 385 B.R. 525, 533 (Bankr. S.D.N.Y. 2008).

64.    As detailed in the Vega and Contador Declarations, the Chilean Proceeding satisfies the above requirements and qualifies as a "foreign proceeding" in accordance with Section 101(23) of the Bankruptcy Code:

(i)    The Chilean Proceeding is a Reorganization Proceeding commenced under and governed by Chapter III of Law 20,720 on Reorganization and Liquidation of Companies and Individuals – "the hallmark of a 'proceeding' is a statutory framework that constrains a company's actions and that

regulates the final distribution of a company's assets" (*Betcorp*, 400 B.R. at 278);

(ii)    Article 25 of the Reorganization Law provides the Overseer with authority to seek any provisional and preservation remedies for the Foreign Debtor's assets that are necessary to protect the interests of the creditors, and he can issue Overseer Certificates to clarify the meaning of orders from the Civil Court – a reorganization proceeding is judicial in character whenever a "court exercises its supervisory powers" (*In re ABC Learning Ctrs. Ltd.*, 445 B.R. 318, 328 (Bankr. D. Del. 2010));

(iii)   In the Chilean Proceeding, non-insider creditors control whether the Reorganization Proceeding Stay is extended and also whether the Plan is approved based on voting thresholds virtually identical to those under Chapter 11 of the Bankruptcy Code – "[a] proceeding is collective if it considers the rights and obligations of all of a debtor's creditors, rather than a single creditor" (*In re Poymanov*, 571 B.R. 24, 33 (Bankr. S.D.N.Y. 2017));

(iv)    The Chilean Proceeding is currently pending before the 30º Civil Court of Santiago, Chile, and assigned Case No. C-7373-2020;

(v)     The Chilean Proceeding is a Reorganization Proceeding commenced under and governed by Chapter III of Law 20,720 on Reorganization and Liquidation of Companies and Individuals – *see In re Millard*, 501 B.R. 644, 649–50 (Bankr. S.D.N.Y. 2013) ("Likewise, Collier explains that '[t]he words "under a law relating to insolvency or adjustment of debt" [in

22

section 101(23)] emphasize that chapter 15 is available not only to debtors that are technically insolvent or facing liquidation, but also to debtors who are in financial distress and may need to reorganize.'" (quoting 8 Collier ¶ 1501.03 (16th 2018)));

(vi)   The Chilean Proceeding subjects the Foreign Debtor's assets and management to the supervision of both the Civil Court and appointed Overseer, who is given broad supervisory authority over the Foreign Debtor's operations, with the ability to seek remedies and issue Overseer Certificates under Article 25 of the Reorganization Law; and

(vii)  The purpose of the Chilean Proceeding is the reorganization of the Foreign Debtor, with the required Plan providing for recovery to various classes of creditors – *see In re Avánzit*, 385 B.R. at 533–34 ("financial restructuring" is a "reorganization" per Sections 101(23) and 1517 analysis, particularly when debts are repaid through a plan).

65.     The Foreign Representative submits that the Chilean Proceeding satisfies all requirement of Section 101(23) of the Bankruptcy Code and is a foreign proceeding entitled to recognition under Chapter 15 of the Bankruptcy Code.

**b.  Chilean Proceeding is a Foreign *Main* Proceeding**

66.     This Court should recognize the Chilean Proceeding as a "foreign main proceeding" under Section 1502(4) of the Bankruptcy Code. Pursuant to Section 1517(b)(1), a "foreign proceeding shall be recognized as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests."

23

67.     Although not defined in the Bankruptcy Code, the term "center of main interests" (or "COMI"), is identified as a debtor's principal place of business. *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 129 (Bankr. S.D.N.Y. 2007), *aff'd,* 389 B.R. 325 (S.D.N.Y. 2008). Courts have identified certain factors for determining a debtor's COMI: (i) location of the debtor's headquarters; (ii) location of those persons or entities that actually manage the debtor; (iii) location of the debtor's primary assets; and (iv) location of the majority of the debtor's creditors or at those affected by the proceeding. *See In re SPhinX, Ltd*., 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006). Lastly, Section 1516(c) establishes that "[i]n the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests."

68.     As detailed in the Vega Declaration, the Foreign Debtor's COMI is clearly in Chile:

(i)     registered office and corporate headquarters are located at Avenida Apoquindo 4775, Oficina 501, Las Condes, Santiago, Chile;

(ii)    primary control and decision-making are made from the principal place of business in Chile;

(iii)   majority of employees reside in Chile;

(iv)    all assets are in Chile, with the exception of the U.S. Accounts; and

(v)     majority of administrative functions, including accounting, financial reporting, budgeting, and cash management, are conducted in Chile.

69.     Per the above, the Foreign Debtor's COMI is Chile and this Court should recognize the Chilean Proceeding as a foreign main proceeding.

### c. Chapter 15 Case Commenced by Duly Authorized Foreign Representative

70.     Section 101(24) of the Bankruptcy Code defines "foreign representative":

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

71.     Section 1517 of the Bankruptcy Code provides that a "foreign representative" shall apply for recognition of the foreign proceeding.

72.     This Court has recognized that Section 101(24) "does not require that a foreign representative be judicially appointed." *See In re Cell C Proprietary Ltd.*, 571 B.R. 542, 553 (Bankr. S.D.N.Y. 2017) (official corporate resolution satisfies the requirements of Section 101(24)); *see also In re Vitro, S.A.B. de C.V.*, 470 B.R. 408, 412 (N.D. Tex. 2012), *aff'd sub nom.*, *In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1047-1049 (5th Cir. 2012), *cert. dismissed*, 133 S. Ct. 1862 (2013) ("Chapter 15 does not require a foreign representative to be appointed by court order"); *In re OAS S.A.*, 533 B.R. 83, 98 (Bankr. S.D.N.Y. 2015) (board-appointed individual appointed qualified as a "foreign representative").

73.     First, the Foreign Representative is a "person" under Section 101(41) of the Bankruptcy Code. Second, the Civil Court appointed the Foreign Representative for the purpose of commencing proceedings under Chapter 15 in the U.S. *See* **Exhibit D**.

74.     Per the above, the Foreign Representative submits that he meets the requirements to serve as the Foreign Debtor's "foreign representative" in accordance with Section 101(24) of the Bankruptcy Code.

### d. Petition Satisfies Requirements of Section 1515 of Bankruptcy Code

75.     Section 1515(b) of the Bankruptcy Code establishes that a petition for recognition must be accompanied by one of the following:

(i)      certified copy of the decision commencing such foreign proceeding and

         appointing the foreign representative;

(ii)     certificate from the foreign court affirming the existence of such foreign

         proceeding and of the appointment of the foreign representative; or

(iii)    in the absence of evidence referred to in paragraphs (i) and (ii), any other

         evidence acceptable to the court of the existence of such foreign proceeding

         and of the appointment of the foreign representative.

76.      In order to satisfy Section 1515(b) of the Bankruptcy Code, the Foreign Debtor

attached and incorporated by reference, the following: (i) official copy and certified English

translation of the Stay Order that formally commenced the Chilean Proceeding; and (ii) official

copy and English translation of the Foreign Rep Appointment (*see* **Exhibit C** and **Exhibit D**).[9]

77.      The Petition meets the requirements of Section 1515 of the Bankruptcy Code,

satisfies the third requirement of Section 1517(a) of the Bankruptcy Code and as such, this Court

should recognize the Chilean Proceeding in this Chapter 15 case. Further, granting recognition

promotes the public policy of respecting foreign proceedings and cooperation between the courts,

per Sections 1501(a), 1508 and 1525(a) of the Bankruptcy Code.

### e. Recognition of the Chilean Proceeding is Not Contrary to U.S. Public Policy

78.      Section 1506 establishes the public policy exception "if the action would be

"manifestly contrary to the public policy of the United States." Courts have generally found the

exception to be narrow, with deference when a foreign court's proceedings meet fundamental

standards of fairness. *See Oilsands Quest Inc.*, 484 B.R. 593, 597 (Bankr. S.D.N.Y. 2012); *see*

---

[9] The Debtor reserves the right to supplement these materials in advance of or at the final hearing on the Petition.

*also: In re Metcalfe & Mansfield Alternative Investments*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010) (only issue is whether foreign procedures meet U.S. standards of fundamental fairness).

79.    Recognition of the Chilean Proceeding and any orders issued by the Civil Court, or Overseer Certificates by the Overseer, is neither contrary to public policy nor justifies a refusal to recognize.

80.    Per the above analysis, the Foreign Representative submits that the Foreign Debtor is entitled to entry of the Recognition Order. *See* **Exhibit B**.

### VII.    SATISFACTION OF LOCAL RULE 9013-1(A)

81.    The Petition includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to the Petition. Accordingly, the Foreign Debtor submits that the Petition satisfies Local Rule 9013-1(a).

### VIII.    NOTICE

82.    The Foreign Representative shall provide notice of the Petition and any related filings to: (i) Office of the U.S. Trustee for the Southern District of New York; (ii) Agent; (iii) Secured Lenders; (iv) Intercompany Lenders; (v) custodian of the U.S. Accounts; (vi) all persons or bodies authorized to administer the Chilean Proceedings; (vii) Foreign Debtor and its Chilean counsel; and (viii) such other parties in interest that have requested notice pursuant to Bankruptcy Rule 2002. In light of the relief requested, the Foreign Representative submits that no further notice is necessary.

### IX.    NO PRIOR REQUEST

83.    No prior request for the relief sought in this Petition has been made to this or any other court.

**X.**    **CONCLUSION**

WHEREFORE, the Foreign Representative respectfully requests: (i) immediate entry of the Provisional Relief Order, substantially in the form attached hereto as **Exhibit A**; (ii) entry of the Recognition Order following the appropriate hearing, substantially in the form attached hereto as **Exhibit B**; and (iii) such other and further relief as is just and proper.

Dated: August 14, 2020                **LIPPES MATHIAS WEXLER FRIEDMAN LLP**
       Buffalo, New York

                                          */s/ John A. Mueller*
                                John A. Mueller, Esq
                                50 Fountain Plaza, Suite 1700
                                Buffalo, New York 14202
                                (716) 362-7614
                                jmueller@lippes.com

                                *· Counsel to the Foreign Representative*

## **VERIFICATION OF PETITION**

I, José Felizardo Figueroa Barrueco, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States of America as follows:

I am the Civil Court-appointed Overseer and Foreign Representative for the Foreign Debtor.

I am duly authorized to file this Verified Petition and to commence and act in this Chapter 15 case on behalf of the Foreign Debtor.

I have read the foregoing Verified Petition, and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information and belief.

Dated: ~~July~~ August 12   , 2020

_____
José Felizardo Figueroa Barrueco

# Exhibit A

# Provisional Relief Order

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---

IN RE:

                                                       CHAPTER 15

MINERA TRES VALLES S.P.A.,[1]                CASE NO. 20-_____-___

        DEBTOR IN A FOREIGN PROCEEDING.

---

**ORDER GRANTING PROVISIONAL RELIEF
UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

Upon consideration of the *(I) Verified Petition for Recognition of Foreign Main Proceeding and (II) Request for Provisional Relief Under Chapter 15 of the Bankruptcy Code* (together with the official form petition filed concurrently therewith, the "Petition"), filed by the Foreign Representative[2] of the above-captioned debtor, Minera Tres Valles S.p.A. ("Foreign Debtor" or the "Company"), along with the Declarations filed in support thereof; and upon the request for provisional relief contained in the Petition,[3] and after due deliberation thereon,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      This Court has jurisdiction to consider the Petition pursuant to 28 U.S.C. §§ 157 and 1334.

B.      This Court is the proper venue for this proceeding pursuant to 28 U.S.C. §§ 1410. This Court may enter a final order consistent with Article III of the United States Constitution.

C.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

---

[1] The Foreign Debtor's Chilean tax identification number is 77.856.200-6 and its executive office is located at Avenida Apoquindo 4775, Oficina 501, Las Condes, Santiago, Chile 758009.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Petition.

[3] *See* Section VI.A of the Foreign Debtor's Verified Petition.

D.      This matter was properly commenced pursuant to Sections 1504, 1509 and 1515 of the Bankruptcy Code.

E.      That relief is urgently needed to protect certain assets of the Foreign Debtor pursuant to Section 1519(a)(1) of the Bankruptcy Code.

IT IS HEREBY ORDERED THAT:

1.      The Foreign Debtor's request for provisional relief in the Petition is GRANTED to the extent set forth herein.

2.      In accordance with Sections 362(a) and 1519(a)(1) of the Bankruptcy Code, all persons and entities, with the exception of the Secured Lenders, Agent or any person appointed on their behalf, are enjoined from seizing, attaching, and enforcing or executing liens, judgments or other claims against the Foreign Debtor's U.S. Accounts.

3.      The automatic stay protections established by this Order shall remain in full force and effect, unless or until otherwise ordered by this Court.

4.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.


Dated: August _____, 2020
       New York, New York          _____
                                   HONORABLE _____
                                   U.S. BANKRUPTCY JUDGE

# Exhibit B

**Recognition Order**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---

IN RE:

MINERA TRES VALLES S.P.A.,[1]

DEBTOR IN A FOREIGN PROCEEDING.

CHAPTER 15

CASE NO. 20-_____-___

---

**ORDER GRANTING PETITION FOR RECOGNITION OF
FOREIGN MAIN PROCEEDING AND RELATED RELIEF
UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

Upon consideration of the *(I) Verified Petition for Recognition of Foreign Main Proceeding and (II) Request for Provisional Relief Under Chapter 15 of the Bankruptcy Code* (together with the official form petition filed concurrently therewith, the "Petition"), filed by the Foreign Representative[2] of the above-captioned debtor, Minera Tres Valles S.p.A. ("Foreign Debtor" or the "Company"), along with the Declarations filed in support thereof;

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      This Court has jurisdiction to consider the Petition pursuant to 28 U.S.C. §§ 157 and 1334.

B.      This Court is the proper venue for this proceeding pursuant to 28 U.S.C. §§ 1410. This Court may enter a final order consistent with Article III of the United States Constitution.

C.      Good, sufficient, appropriate, and timely notice of the filing of the Petition and the hearing on the Petition has been given by the Foreign Representative, pursuant to Bankruptcy Rule 2002.

---

[1] The Foreign Debtor's Chilean tax identification number is 77.856.200-6 and its executive office is located at Avenida Apoquindo 4775, Oficina 501, Las Condes, Santiago, Chile 758009.
[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Petition.

D.       This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

E.       No objections or other responses were filed that have not been overruled, withdrawn, or otherwise resolved.

F.       This matter was properly commenced pursuant to Sections 1504, 1509 and 1515 of the Bankruptcy Code.

G.       The Foreign Representative is a "person" pursuant to Section 101(41) of the Bankruptcy Code and is the duly appointed "foreign representative" of the Debtor as such term is defined in Section 101(24) of the Bankruptcy Code. The Foreign Representative has satisfied the requirements of Section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4).

H.       The Chilean Proceeding is entitled to recognition by this Court pursuant to Section 1517 of the Bankruptcy Code.

I.        The Chilean Proceeding is pending in Chile, where the Debtor has the "center of its main interests" as referred to in Section 1517(b)(1) of the Bankruptcy Code. Accordingly, the Chilean Proceeding is a "foreign main proceeding" pursuant to Section 1502(4) of the Bankruptcy Code and entitled to recognition as a foreign main proceeding pursuant to Section 1517(b)(1) of the Bankruptcy Code.

J.        The relief granted hereby is necessary to effectuate the purposes and objectives of Chapter 15 and to protect the Debtor and its interests.

IT IS HEREBY ORDERED THAT:

1.       The Petition is GRANTED as set forth herein.

2.       The Chilean Proceeding is recognized as foreign main proceeding pursuant to Section 1517 of the Bankruptcy Code, and all the effects of recognition as set forth in Section 1520 of the Bankruptcy Code shall apply.

3.     Upon entry of this Order, the Chilean Proceeding and all prior orders of the Chilean Civil Court shall be and hereby are granted comity and given full force and effect in the United States and pursuant to Section 1520 of the Bankruptcy Code, among other things:

(i)     protections of Sections 361 and 362 of the Bankruptcy Code apply to the Foreign Debtor;

(ii)     all persons and entities, with the exception of the Secured Lenders, Agent or any person appointed on their behalf, are enjoined from seizing, attaching, and enforcing or executing liens, judgments or other claims against the Foreign Debtor's property in the United States or from transferring, encumbering, or otherwise disposing of or interfering with the Foreign Debtor's assets or agreements in the United States without the express consent of the Foreign Representative; and

(iii)     all persons and entities, with the exception of the Secured Lenders, Agent or any person appointed on their behalf, are enjoined from commencing or continuing, including the issuance or employment of process of, any judicial, administrative or any other action or proceeding involving or against the Foreign Debtor or its assets or proceeds thereof, or to recover a claim or enforce any judicial, quasi-judicial, regulatory, administrative, or other judgment, assessment, order, lien, or arbitration award against the Foreign Debtor or its assets or proceeds thereof.

4.     The Foreign Representative, the Foreign Debtor, and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or Local Rules of this Court.

5.     No action taken by the Foreign Representative, the Foreign Debtor, or their respective successors, agents, representatives, advisors, or counsel in preparing, disseminating, applying for, implementing, or otherwise acting in furtherance of or in connection with the Chilean Proceeding, this Order, this Chapter 15 case, or any adversary proceeding herein, or contested matters in connection therewith, will be deemed to constitute a waiver of any immunity afforded the Foreign Representative, including, without limitation, pursuant to Section 1510 of the Bankruptcy Code.

6.      The banks and financial institutions with which the Foreign Debtor maintains bank accounts, or on which checks are drawn or electronic payment requests made in payment of pre- or post-petition obligations, are authorized and directed to continue to service and administer the Foreign Debtor's bank accounts without interruption and in the ordinary course.

7.      The Foreign Representative is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

8.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

9.      This Court shall retain jurisdiction with respect to the enforcement, amendment, or modification of this Order, any requests for additional relief or any adversary proceeding brought in and through this Chapter 15 case, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.

10.     This Order applies to all parties in interest in this Chapter 15 case and all of their agents, employees and representatives, and all those who act in concert with them who receive notice of this Order.

Dated: September ___, 2020
         New York, New York            _____
                                       HONORABLE _____
                                       U.S. BANKRUPTCY JUDGE

## Exhibit C

## Stay Order – Chilean Proceeding



**Translation Expert Inc.**
**2300 Yonge St. Suite 1600**
**Toronto, ON M4P 1E4**
**Tel: 416-968-2002**

## OFFICIAL CERTIFIED TRANSLATION AFFIDAVIT

**The undersigned Official of Translation Expert Inc. hereby provides this
CERTIFIED TRANSLATION and solemnly declares that our translators have
translated to the best of their abilities from the SPANISH language(s) into the
ENGLISH language the attached document(s) purported to be:**

## LEGAL DOCUMENT

**and make this solemn declaration conscientiously believing it to be true, and
knowing that it is of the same force and effect as if made under oath.**

**For TRANSLATION EXPERT INC.**

Annette Jaeger

**Declared before me**

**at the City of Toronto,**
**Province of Ontario, in the Regional Municipality**
**of York, on this 14th day of June, 2020**
**Commissioner for Taking Affidavits**

Jose Davidovic, a Commissioner, etc.,
Province of Ontario, for Translation Expert Inc.,
limited to documents translated in connection
with the business of that company.
Expires November 8, 2021.



**SHEET: 9 .-  nine .-**

| | |
|---|---|
| **SCHEDULE** | : 1. [805]Reorganization Proceedings |
| **COURT** | : 30th Civil Court of Santiago |
| **CASE NUMBER** | : C-7373-2020 |
| **RE** | : /MINERA TRES VALLES SPA |

**Santiago,    May twenty-nine, two thousand twenty**

Ruling on the hearing held on May 25 , 2020,  folio  8:

As per Official Letter N°8178 dated May 22, 2020, answered by the Superintendence of Insolvency and Resumption.

On the matter of the request for reorganization filed on May 12, 2020, it is rightfully ordered as follows:

**Main matter:**

WHEREAS:

In consideration of the background facts presented by the debtor, the certificate submitted by the Superintendence of Insolvency and Resumption dated May 22, 2020 and pursuant to the provisions set forth in article 57 of Law N°20,720,  it is hereby adjudged as follows:

1) **José Felizardo Figueroa Barrueco**, with place of residence at Avda. Apoquindo N° 3910, piso 15, comuna de Las Condes, Santiago, phone no. 227543000, e-mail felizardofigueroa@ffma.cl is appointed as the official trustee; and Enrique Ortiz D'Amico, with place of residence at Amunátegui N° 277, oficina 1001, comuna and city of Santiago, phone no. 226980795, e-mail enriqueortiz@tie.cl is appointed as the deputy trustee.

2) During a period of thirty days since the notification of this ruling, the debtor shall be subject to an Insolvency-Related Financial Protection, by virtue of which:

   a) No Winding Up Petition may be filed against the Debtor, and no monitory proceedings, executions of any kind or restitutions arising from lease-related proceedings may be filed or claimed against the Debtor. The foregoing shall not apply to employment lawsuits in relation to obligations classified as first-class priorities; in this case, only the execution and liquidation of Debtor's assets shall be suspended, except in the case of employment lawsuits of this type initiated by the Debtor's spouse, relatives, managers, administrators, attorneys-in-fact with a general power of attorney for acts of administration or other persons that can influence the administration of the Debtor's businesses, where the Debtor is considered as such;

   b) The proceedings listed in item a) hereinabove, as well as their statute of limitations periods, shall be suspended;

   c) Any and all contracts entered into by the Debtor, as well as their payment terms, shall remain in effect. Therefore, they may not be unilaterally terminated early, their early fulfillment may not be demanded and the contract guarantees may not be enforced grounded



on the start of Reorganization Proceedings.
Payment of the credit of the creditor that violates this prohibition shall be postponed until after all creditors affected by the Court-Mandated Reorganization Agreement, including the creditors who are related to the debtor, are paid;

d) In the event that the debtor is registered with any public registry as a contractor or provider of any service, it may not be eliminated or barred from participating in calls for tender citing the Reorganization Proceedings as a reason, provided that the debtor is up to date with its contractual obligations with the corresponding client.

3) While the Insolvency-Related Financial Protection is in effect, the debtor:

a) Shall be subject to the oversight of the Official Trustee, who shall have the duties set forth in article 25 of the pertinent Law;

b) May not encumber, sell, dispose of, or otherwise transfer its assets, except for those whose sale, disposition or transfer is related to its line of business or for those that are strictly necessary for the normal performance of its activities; and all other assets shall be handled as per the provisions set forth in article 74, and;

c) Since the debtor is a legal person, it may not modify its covenants, corporate by-laws or representation regime. Registration of any transfer of shares of the Indebted Company in the corresponding corporate records shall require the authorization of the Official Trustee, who shall grant it provided that it does not alter or affect the rights of the creditors. The foregoing shall not be applicable if the indebted company is a publicly listed company.

4) The Insolvency-Related Financial Protection expires on **Monday, July 6, 2020.**

5) Through the Trustee, the debtor shall publish its Court-Mandated Reorganization Agreement proposal in the Bankruptcy Notice, and submit it to this court, at least ten days before the date set for the Creditors' Meeting; otherwise, the Trustee shall certify this fact and the corresponding Liquidation shall be ruled without further proceedings being required.

6) The Creditors' Meeting shall take place on **Monday, July 6, 2020 at 12:00 hours**, for the purposes of hearing and ruling in relation to the Court-Mandated Reorganization Agreement proposal submitted by the Debtor, <u>and the Official Trustee must notify of this resolution on May 30, 2020.</u>

7) Creditors shall have eight business days from the publication of this ruling in the Bankruptcy Notice to certify their credits before the Court that is hearing these proceedings. For these purposes, they must annex the provable claims for those credits, and indicate whether they are guaranteed by a Lien or Mortgage, as well as the commercial appraisal for the assets encumbered by such guarantees. No certification shall be required if the credits and commercial appraisal of the guarantees are specified, to the satisfaction of the creditor, in the statement of debts contained in the document that the debtor annexed to the Reorganization request pursuant to article 56 sub-paragraph 4 of Law 20,720.

8) Within fifteen days since the notification of this ruling, all creditors must certify before the court their legal status in order to participate in the Reorganization Proceedings, expressly specifying the



powers conferred to their attorneys-in-fact to take part in, modify and accept the Court-Mandated Reorganization Agreement.

9) The creditors are hereby ordered to take part in these proceedings, either by certifying their credits or by certifying their legal status within the period set forth in the law, and in the event that their credit is specified to their satisfaction in the statement of debts outlined in sub-paragraph 4 of article 56 of the pertinent Law, to expressly specify the RUT of the creditor company or natural person; the name and RUT of their legal representative, if any; and their authorized e-mail address; otherwise, their request shall be deemed to not have been filed.

10) The Trustee must register a copy of this ruling with the pertinent land and property registrars as a side note to the property registration entry for each of the real properties owned by the debtor.

11) The Trustee must submit to the court, and publish in the Bankruptcy Notice, his/her report in relation to the Court-Mandated Reorganization Agreement proposal at least three days before the date set for the Creditors' Meeting that will vote on the aforementioned agreement. This Report by the Trustee must contain a well-grounded opinion in relation to:

   a) Whether fulfilment of the proposal is feasible, considering the situation of the debtor;
   b) The probable amount collectable by each creditor based on their corresponding categories, in the event of a Reorganization Proceeding; and
   c) Whether the credit ascertainment proposal and the preference specified by the debtor are compliant with the law.

12) In consideration of the foregoing, the Trustee fees proposal hearing is set to take place on **Friday, June 5, 2020 at 12:30 hours**. To this effect, the Trustee, the debtor and the three largest creditors specified in the certification by the independent accountant-auditor outlined in article 55, submitted during the proceedings of May 14, 2020, must appear with their lawful attorney-in-fact, who must have sufficient capacities to perform this act; otherwise, they shall be subject to the provisions set forth in Article 57, sub-paragraph 9 of Law 20,720.

13) The debtor must provide the Trustee with a copy of all the background documentation as per article 56, which shall be published by the Trustee, together with a copy of this ruling, in the Bankruptcy Notice at the moment specified in sub-paragraph 6).

14) Since the Creditors' Meeting and the Fee Proposal Hearing can be considered to be urgent and to be performed without delay, pursuant to article 3 of Law No. 21,226, and as per article 19 of Decree 53 of the Supreme Court, the hearings are to be held via videoconference, over the Zoom platform, as per the aforestated schedules.

   For these purposes, all parties to these proceedings who have informed their e-mail to the court as ordered in sub-paragraph 9 hereof are to be sent the protocol developed by the Court for these purposes, as well the ID and the corresponding password 24 hours before the aforementioned hearing.



15) The trustee must certify the fact that the publication was made in the Bankruptcy Notice on the day that it takes place.

**First addendum:** as requested, notify the aforementioned e-mails only under the circumstances outlined in sub-paragraph 5 of article 6 of Law No. 20,720;

**Second addendum:** consider the legal status to be submitted and received for the record;

**Third addendum:** Let this be added to the record.

fcg

The foregoing ruling was published in the daily gazette in **Santiago**, on **May twenty-nine, two thousand twenty**.



DANIELA ANDREA ROYER FAUNDEZ
Date: 29/MAY/2020 18:18:31



This document is electronically signed and its original can be certified at http://verificadoc.pjud.cl or in the case's filing documents.
Since April 05, 2020, the indicated hour corresponds to the winter time established in Continental Chile. For the Magallanes and Chilean Antarctic Region, add one hour, and for Occidental Insular Chile, Easter Island and Isla Salas y Gomez, subtract two hours. For more information visit http://www.horaoficial.cl

FOJA: 9 .- nueve .-

| NOMENCLATURA | : 1. [805]Resolución de Reorganización |
|---|---|
| JUZGADO | : 30º Juzgado Civil de Santiago |
| CAUSA ROL | : C-7373-2020 |
| CARATULADO | : /MINERA TRES VALLES SPA |

**Santiago, veintinueve de Mayo de dos mil veinte**

Proveyendo presentación de fecha 25 de mayo de 2020, folio 8:

A sus antecedentes Oficio Superir N° 8178, evacuado por la Superintendencia de Insolvencia y Reemprendimiento, de fecha 22 de mayo de 2020.

Proveyendo derechamente solicitud de reorganización presentada con fecha 12 de mayo de 2020:

**A lo principal:**

VISTOS:

Teniendo presente el mérito de los antecedentes acompañados por el deudor, el certificado remitido por la Superintendencia de Insolvencia y Reemprendimiento, de fecha 22 de mayo de 2020 y en cumplimiento a lo dispuesto en el artículo 57 de la Ley N° 20.720, se resuelve que:

1) Se designa como Veedor Titular a don **José Felizardo Figueroa Barrueco**, domiciliado en Avda. Apoquindo N° 3910, piso 15, comuna de Las Condes, Santiago, teléfono N° 227543000, correo electrónico felizardofigueroa@ffma.cl; y como Veedor Suplente a don Enrique Ortiz D´Amico, domiciliado en Amunátegui N° 277, oficina 1001, comuna y ciudad de Santiago, teléfono N° 226980795, correo electrónico enriqueortiz@tie.cl.

2) Que durante el plazo de treinta días contados desde la notificación de esta resolución, el deudor gozará de una Protección Financiera Concursal, en virtud de la cual

a) No podrá declararse ni iniciarse en contra del Deudor un Procedimiento Concursal de Liquidación, ni podrán iniciarse en su contra juicios ejecutivos, ejecuciones de cualquier clase o restituciones en juicios de arrendamiento. Lo anterior no se aplicará a los juicios laborales sobre obligaciones que gocen de preferencia de primera clase, suspendiéndose en este caso sólo la ejecución y realización de bienes del Deudor, salvo que se trate de juicios laborales de este tipo que el Deudor tuviere en tal carácter a favor de su cónyuge, de sus parientes, o de los gerentes, administradores, apoderados con poder general de administración u otras personas que tengan injerencia en la administración de sus negocios;

b) Se suspenderá la tramitación de los procedimientos señalados en la letra a) precedente y los plazos de prescripción extintiva;

c) Todos los contratos suscritos por el Deudor mantendrán su vigencia y condiciones de pago. En consecuencia, no podrán terminarse anticipadamente en forma unilateral, exigirse anticipadamente su cumplimiento o hacerse efectivas las garantías contratadas, invocando





como causal el inicio de un Procedimiento Concursal de Reorganización. El crédito del acreedor que contraviniere esta prohibición quedar pospuesto hasta que se pague a la totalidad de los acreedores a quienes les afectare el Acuerdo de Reorganización Judicial, incluidos los acreedores Personas Relacionadas del Deudor;

d) Si el Deudor formare parte de algún registro público como contratista o prestador de cualquier servicio, y siempre que se encuentre al día en sus obligaciones contractuales con el respectivo mandante, no podrá ser eliminado ni se le privará de participar en procesos de licitación fundado en el inicio de un Procedimiento Concursal de Reorganización.

3) Que durante la Protección Financiera Concursal el deudor:

a) Quedará sujeto a la intervención del Veedor titular, el que tendrá los deberes contenidos en el artículo 25 de la Ley del ramo;

b) No podrá gravar o enajenar sus bienes, salvo aquellos cuya enajenación o venta sea propia de su giro o que resulten estrictamente necesarios para el normal desenvolvimiento su actividad; y respecto de los demás bienes o activos, se estará a lo previsto en el artículo 74, y;

c) Al ser el deudor una persona jurídica, éste no podrá modificar sus pactos, estatutos sociales o régimen de poderes. La inscripción de cualquier transferencia de acciones de la Empresa Deudora en los registros sociales pertinentes requerirá la autorización del Veedor titular, quien la extenderá en la medida que ello no altere o afecte los derechos de los acreedores. Lo anterior no regirá si la empresa deudora fuere una sociedad anónima abierta que haga oferta pública de sus valores.

4) La Protección Financiera Concursal expira el día **lunes 6 de julio de 2020.**

5) El deudor, a través del Veedor, publicará en el Boletín Concursal y acompañará a este tribunal, a lo menos diez días antes de la fecha fijada para la Junta de Acreedores, su propuesta de Acuerdo de Reorganización Judicial, de lo contrario, el Veedor certificará esta circunstancia y se dictará la respectiva Resolución de Liquidación, sin más trámite.

6) La Junta de Acreedores deberá efectuarse el día **lunes 6 de julio de 2020, a las 12:00 horas,** para los efectos de conocer y pronunciarse sobre la propuesta de acuerdo de Reorganización Judicial que presente el Deudor, debiendo el Veedor Titular proceder a la notificación de esta resolución el día 30 de mayo de 2020.

7) Los acreedores tendrán el plazo de ocho días hábiles, contado desde la publicación de la presente resolución en el Boletín Concursal, para verificar sus créditos ante el Tribunal que conoce del procedimiento. Para tal efecto, deberán acompañar los títulos justificativos de éstos, debiendo señalar si se encuentran garantizados con Prenda o Hipoteca y el avalúo comercial de los bienes sobre los que recaen las garantías. No será necesaria verificación alguna si los créditos y el avalúo comercial de las garantías se encontraren señaladas, a satisfacción del acreedor, en el estado de deudas señalado en el documento acompañado por el deudor a la solicitud de Reorganización en conformidad al artículo 56 N° 4 de La Ley 20.720.

8) Que dentro de quince días contados desde la notificación de esta resolución, todos los acreedores deberán acreditar ante el tribunal su personería para actuar en el Procedimiento Concursal de Reorganización, con indicación expresa de la





facultad que le confieran a sus apoderados para conocer, modificar y adoptar el Acuerdo de Reorganización Judicial.

9) Se ordena a los acreedores que se hagan parte en el presente procedimiento ya sea verificando sus créditos o acreditando su personería dentro del plazo legal, en el caso que su crédito se encuentre señalado a satisfacción en el estado de deudas a que se refiere el N° 4 del artículo 56 de la Ley del ramo, a que señalen expresamente el RUT de la empresa o persona natural acreedora; el nombre y RUT de su representante legal si fuere pertinente; y correo electrónico habilitado, bajo apercibimiento de tener por no presentada su solicitud.

10) El Veedor deberá inscribir copia de esta resolución en los conservadores de bienes raíces correspondientes al margen de la inscripción de propiedad de cada uno de los inmuebles que pertenecen al deudor.

11) El Veedor deberá acompañar al tribunal y publicar en el Boletín Concursal su informe sobre la propuesta de Acuerdo de Reorganización Judicial, a lo menos tres días antes de la fecha fijada para la celebración de la Junta de Acreedores que votará dicho acuerdo. Este Informe del Veedor deberá contener la calificación fundada acerca de:

  a) Si la propuesta es susceptible de ser cumplida, habida consideración de las condiciones del deudor;

  b) El monto probable de recuperación que le correspondería a cada acreedor en sus respectivas categorías, en caso de un Procedimiento Concursal de Liquidación; y

  c) Si la propuesta de determinación de los créditos y su preferencia indicada por el deudor se ajustan a la ley.

12) En consecuencia, se fija el día **viernes 5 de junio de 2020, a las 12:30 horas,** para la realización de la audiencia de proposición de honorarios del Veedor. Para tal efecto, el Veedor, el deudor y los tres mayores acreedores indicados en la certificación del contador auditor independiente referida en el artículo 55, y acompañada al proceso con fecha 14 de mayo de 2020, deberán comparecer con sus apoderados legalmente constituidos y con poder suficiente para tal efecto, bajo apercibimiento legal del Artículo 57 N° 9 de la Ley 20.720.

13) El deudor deberá proporcionar al Veedor copia de todos los antecedentes acompañados conforme al artículo 56, los que serán publicados junto a copia de esta resolución, por el Veedor en el Boletín Concursal en la oportunidad referida en el numeral 6).

14) Que en cuanto a la modalidad de la audiencia, considerando que la realización de la Junta de Acreedores y la Audiencia de Proposición de Honorarios se pueden enmarcar dentro de los casos que requieran ser realizados con urgencia o sin dilación, al tenor de lo dispuesto en el artículo 3 de la Ley N° 21.226, en concordancia al artículo 19 del Acta 53 de la Excma. Corte Suprema, dichas audiencias se realizarán mediante video-conferencia, a través de la plataforma Zoom, conforme a la programación ya referida.

Para tal efecto, todo interviniente que haya comunicado correo electrónico al tribunal como se ordena en el numeral 9 de esta resolución, se le remitirá el protocolo dictado por el Tribunal para estos efectos y el ID con la respectiva contraseña 24 horas antes de la mentada audiencia.




15) El veedor deberá dejar constancia en el expediente de la publicación en el boletín concursal, el mismo día en que ésta se practique.

**Al primer otrosí:** como se pide, notifíquese a los correos señalados, sólo en el caso prevenido en el inciso 5 del artículo 6 de la Ley N° 20.720;

**Al segundo otrosí:** téngase presente y por acompañada personería, con citación;

**Al tercer otrosí:** téngase presente.

fcg

En **Santiago,** a **veintinueve de Mayo de dos mil veinte ,** se notificó por el estado diario, la resolución precedente.







# **Exhibit D**

# **Foreign Rep Appointment**



**Translation Expert Inc.**
**2300 Yonge St. Suite 1600**
**Toronto, ON M4P 1E4**
**Tel: 416-968-2002**

### OFFICIAL CERTIFIED TRANSLATION AFFIDAVIT

**The undersigned, Jose Davidovic, ATIO Certified Translator, hereby provides this
CERTIFIED TRANSLATION and attests that I have accurately and carefully
translated to the best of my abilities from the SPANISH language into the
ENGLISH language the attached document(s) purported to be:**

### AUTHORIZATION

**and state that the content is a true translation and representation of the
document(s) and that I am qualified to translate them.**

**DECLARED JULY 11, 2020**

*for* **TRANSLATION EXPERT Inc.**







**EXEMPT RESOLUTION NO. 7708**

**MAT: AUTHORIZES TO ACT IN FOREIGN STATES.**

**REF: PROCEDURE FOR THE REORGANIZATION OF THE MINING DEBTOR COMPANY TRES VALLES SPA, ROL N° C-7373-2020 OF THE 30° CIVIL COURT OF SANTIAGO**

**SANTIAGO, 09 JULY 2020**

**WHEREAS:**

The powers conferred to me by Law No. 20.720, which replaces the current bankruptcy regime with a Law on the Reorganization and Settlement of Assets of Companies and Persons; the provisions of the D.F.L. NO. 1-19.653, of November 17, 2001, which sets out the consolidated, coordinated and systematized text of Law No. 18.575, Constitutional Organization of General Bases of State Administration; In Law No. 19.880, which lays down the basis for administrative procedures governing the acts of the bodies of the State Administration; in Resolution No. 7 of 2019 of the Office of the Comptroller General of the Republic, which lays down rules on exemption from the record; The powers conferred by article 304 of Law No. 20.720 and Supreme Decree No. 112 of November 11, 2019, Ministry of Economy, Development and Tourism.

**CONSIDERING:**

**1**    That, Chapter VIII of Law No. 20.720 regulates rules relating to cross-border insolvency.

**2**    That, article 304 of the said Law states that *"the Superintendence shall be the body legitimized to act in a foreign State representing a proceeding initiated in Chile under this law or any other special rule relating to insolvency, to the extent permitted by applicable foreign law.*

*The Superintendence may delegate this authorization to act on the insolvency administrator who is aware of the procedure. The civil and administrative liability in which they may incur in the exercise of their functions in a foreign proceeding shall be exercised in accordance with the terms set forth in this law."*

Brothers
Amunátegui #
228 Santiago,
Chile
Phone: (56 2) 2495 2590
Fax: (56 2) 2495 25 85

www.superir.gob.cl



**3**      That, SIR Instruction No. 1 of 6 July 2016 instructed on matters relating to the processing of cross-border insolvency proceedings.

**4**      That, through Superir request No. 25987 of July 7, 2020, inspector, Mr. José Felizardo Figueroa Barrueco, requested from this Superintendence the authorization *"to act in a foreign state, for the purpose of filing in the United States of America a request for recognition of the Judicial Reorganization Procedure currently followed in Chile, in accordance with Chapter 15 of the United States Bankruptcy Code*, accompanying the request of the Debtor Company.

**5**      That, Article 1 of the aforementioned SIR Instructional No. 1 establishes that "*the Superintendence shall delegate the authorization to act in the foreign State to the Liquidator (…) who is aware of the respective bankruptcy procedure, when so provided by a decision dictated to that effect (…)."*

**6**      That, as reported by inspector, Mr. José Felizardo Figueroa Barrueco, it is possible to note that the rules concerning the cross-border insolvency procedure apply to the bankruptcy proceedings, as there would be assets of the debtor abroad.

**7.**   In view of the above,

### I HEREBY RESOLVE:

**1**      **AUTHORIZED** to act abroad to inspector, Mr. José Felizardo Figueroa Barrueco, RUN 6.898.231-6, residing at Avenida Apoquindo 3910, floor 15, Las Condes, Santiago de Chile, With respect to the procedure for the reorganization of the Three Valleys SpA Mining Debtor Company in accordance with the terms set out in article 304 of Law No. 20.720.

**2**      **Authorize** the inspector of the Procedure for the Reorganization of the Debtor Minera Tres Valles SpA, to Mr. José Felizardo Figueroa Barrueco to exercise the necessary actions to carry out the authorization mentioned in the previous number, in the jurisdiction of the United States of America.

**3**      **Enter** in the record that this authorization shall last a maximum of 6 months from the notification of this act, which may be extendable by this Superintendence, if the inspector, Mr. José Felizardo Figueroa Barrueco requests it and the accompanying background attest to the need to extend that period.

**4**      **INSTRUCT** the Inspector, Mr. José Felizardo Figueroa Barrueco, to comply with the following:

Association of Translators and Interpreters of Ontario
ES-EN Certified Translator
atio
Jose Davidovic
3059

TRANSLATION EXPERT
CERTIFIED
TRANSLATION
OFFICIAL TRANSLATION

(i) Be fully accountable for supporting documents for all expenses incurred in connection with the exercise of this authorization.

(ii) To inform of all the acts and actions that you carry out on the fulfillment of this authorization, accompanied to that effect with all the pertinent documents.

(iii) To request a meeting of the Board of Creditors in order to bring to the attention of the Board of Creditors the matters on which it is responsible for taking a decision in the framework of this cross-border insolvency proceeding, where the importance of the latter so requires.

From points (i) and (ii) above, you must inform this Superintendence and the court of the proceedings on the last working day of each month. It shall also report the above to the Board of Creditors held on the date immediately following the submission of the said report.

**5** **NOTIFY** this resolution by e-mail to the inspector, Mr. José Felizardo Figueroa Barrueco, by the Reception Office.

**Record and archive,**

**HUGO SÁNCHEZ RAMÍREZ**
**SUPERINTENDENTE DE INSOLVENCIA Y**
**REEMPRENDIMIENTO**
**SUPERINTENDENT OF BANKRUPTCY AND**
**RE-ENTREPRENEURSHIP**

PCP/CVS/POR
<u>**DISTRIBUTION:**</u>
Mr. José Felizardo Figueroa Barrueco
Inspector
**CC.**
-Eduardo Cáceres Guzmán
Head of the Inspection Department
-Rocío Vergara Sassarini
Process Sub-Department Bankruptcy Manager
Archive







**RESOLUCIÓN EXENTA N° 7708**

**MAT.: AUTORIZA PARA ACTUAR EN ESTADOS EXTRANJEROS.**

**REF.: PROCEDIMIENTO CONCURSAL DE REORGANIZACIÓN DE LA EMPRESA DEUDORA MINERA TRES VALLES SpA, ROL N.° C-7373-2020 DEL 30° JUZGADO CIVIL DE SANTIAGO**

**SANTIAGO, 09 JULIO 2020**


**VISTOS:**

Las facultades que me confiere la Ley N.° 20.720, que sustituye el régimen concursal vigente por una Ley de Reorganización y Liquidación de Activos de Empresas y Personas; lo dispuesto en el D.F.L. N.° 1-19.653, de 17 de noviembre de 2001, que fija el texto Refundido, Coordinado y Sistematizado de la Ley N.° 18.575, Orgánica Constitucional de Bases Generales de la Administración del Estado; en la Ley N.° 19.880, que establece bases de los procedimientos administrativos que rigen los actos de los Órganos de la Administración del Estado; en la Resolución N.° 7 de 2019 de la Contraloría General de la República, que fija normas sobre exención del trámite de toma de razón; las facultades conferidas por el artículo 304 de la Ley N.° 20.720 y en el Decreto Supremo N.° 112 de 11 de noviembre de 2019 del Ministerio de Economía, Fomento y Turismo.

**CONSIDERANDO:**

**1.** Que, el Capítulo VIII de la Ley N.° 20.720 regula las normas relativas a la insolvencia transfronteriza.

**2.** Que, el artículo 304 de la referida Ley señala que "*La Superintendencia será el órgano legitimado para actuar en un Estado extranjero en representación de un procedimiento iniciado en Chile con arreglo a esta ley o a toda otra norma especial relativa a la insolvencia, en la medida en que lo permita la ley extranjera aplicable.*

*La Superintendencia podrá delegar esta autorización para actuar en el administrador concursal que esté conociendo del procedimiento. La responsabilidad civil y administrativa en la que pudieren incurrir en el ejercicio de sus funciones en un procedimiento extranjero se hará valer de acuerdo a los términos establecidos en esta ley.*"



**3.** Que, el Instructivo SIR N.° 1 de 6 de julio de 2016 instruyó sobre aspectos relativos a la tramitación del procedimiento de insolvencia transfronteriza.

**4.** Que, mediante Ingreso Superir N.° 25987 de 7 de julio de 2020, el Veedor, señor José Felizardo Figueroa Barrueco, solicitó a esta Superintendencia la autorización *"para actuar en Estado extranjero, con el objeto de presentar en los Estados Unidos de América una solicitud de reconocimiento del Procedimiento Concursal de Reorganización Judicial actualmente seguido en Chile, de conformidad a lo establecido en el Capítulo 15 del Código de Quiebras de Estados Unidos"*, acompañando el requerimiento de la Empresa Deudora.

**5.** Que, el artículo 1 del referido Instructivo SIR N.° 1 establece que *"La Superintendencia delegará la autorización para actuar en el Estado extranjero en el Liquidador (…) que estuviere conociendo del procedimiento concursal respectivo, cuando así lo disponga mediante resolución fundada dictada al efecto (…)."*

**6.** Que, acorde a lo informado por el Veedor, señor José Felizardo Figueroa Barrueco, es posible advertir que al Procedimiento Concursal de la referencia le resultan aplicables las normas relativas al procedimiento de insolvencia transfronteriza, por cuanto existirían bienes del deudor en el extranjero.

**7.** Que, en razón de los antecedentes señalados,

## RESUELVO:

**1.** **AUTORÍZASE** para actuar en el extranjero al Veedor, señor José Felizardo Figueroa Barrueco, RUN 6.898.231-6, domiciliado en Avenida Apoquindo 3910, piso 15, Las Condes, Santiago de Chile, respecto del Procedimiento Concursal de Reorganización de la Empresa Deudora Minera Tres Valles SpA conforme a los términos señalados en el artículo 304 de la Ley N.° 20.720.

**2.** **FACÚLTESE** al Veedor del Procedimiento Concursal de Reorganización de la Empresa Deudora Minera Tres Valles SpA, al señor José Felizardo Figueroa Barrueco para ejercer las actuaciones necesarias para llevar a cabo la autorización señalada en el numeral anterior, en la jurisdicción de Estados Unidos de América.

**3.** **DÉJASE** constancia que la presente autorización tendrá una duración máxima de 6 meses desde la notificación del presente acto, la cual puede ser prorrogable por esta Superintendencia, si el Veedor, señor José Felizardo Figueroa Barrueco lo solicita y los antecedentes acompañados acreditan la necesidad de extender dicho período.

**4.** **INSTRÚYASE** al Veedor, señor José Felizardo Figueroa Barrueco, a dar cumplimiento a lo siguiente:

Association of Translators and Interpreters of Ontario
ES-EN
Certified Translator
atio
Jose Davidovic
3059

TRANSLATION EXPERT
CERTIFIED
TRANSLATION
OFFICIAL TRANSLATION

(i) Rendir cuenta detallada con los documentos respaldatorios de todos los gastos en que incurra con motivo del ejercicio de la presente autorización.

(ii) Informar de todas las gestiones y actuaciones que realice con motivo de la presente autorización, acompañando al efecto todos los documentos fundantes.

(iii) Citar a Junta de Acreedores para poner en conocimiento de ésta, las materias sobre las cuales le corresponda pronunciarse en el marco del presente procedimiento de insolvencia transfronteriza, cuando la importancia de éstas así lo exijan.

De los puntos (i) y (ii) precedentes deberá informar a esta Superintendencia y al tribunal del procedimiento, el último día hábil de cada mes. Asimismo, deberá informar de lo anterior a la Junta de Acreedores que se celebre en la fecha inmediatamente posterior a la entrega del referido informe.

**5. NOTIFÍQUESE** la presente resolución mediante correo electrónico al Veedor, señor José Felizardo Figueroa Barrueco por la Oficina de Partes de este Servicio.

**Anótese y archívese,**

HUGO SÁNCHEZ RAMÍREZ
SUPERINTENDENTE DE INSOLVENCIA Y
REEMPRENDIMIENTO

PCP/CVS/POR
**DISTRIBUCION:**
Señor José Felizardo Figueroa Barrueco
Veedor
**CC.**
-Eduardo Cáceres Guzmán
Jefe Departamento de Fiscalización
-Rocío Vergara Sassarini
Jefe Subdepartamento de Proc. Concursales
-Archivo





3